No. ______________________

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**CALIFORNIA COASTAL COMMISSION,**

Petitioner,

**v.**

**SURFACE TRANSPORTATION BOARD, and UNITED STATES OF AMERICA,**

Respondents.

# PETITION FOR REVIEW

ROB BONTA
Attorney General of California
DANIEL A. OLIVAS
Senior Assistant Attorney General
DAVID G. ALDERSON
Supervising Deputy Attorney General

PATRICK TUCK
Deputy Attorney General
State Bar No. 305718
1515 Clay Street, 20th Floor
P.O. Box 70550
Oakland, CA 94612-0550
Telephone: (510) 879-1006
Fax: (510) 622-2270
Email: Patrick.Tuck@doj.ca.gov
*Attorneys for Petitioner California Coastal Commission*

## PETITION FOR REVIEW

Petitioner California Coastal Commission ("Commission"), pursuant to 28 U.S.C. §§ 2321(a), 2342(5), and 2344, petitions the Court for review of a decision by the Surface Transportation Board ("Board") titled "MENDOCINO RAILWAY—PETITION FOR DECLARATORY ORDER," Docket No. FD 36868, Service Date – September 26, 2025.

In this proceeding, over the Commission's objections, the Board considered and ultimately granted Mendocino Railway's petition for a declaratory order, stating that Mendocino Railway is a Class III rail carrier subject to the Board's jurisdiction. The Commission contends that the Board erred by failing to consider legally pertinent matters such as whether wholly intrastate Mendocino Railway actually provides transportation "as part of the interstate rail network" when finding that Mendocino Railway was subject to the Board's jurisdiction, to the Commission's detriment, and in violation of the Administrative Procedure Act, 5 U.S.C § 701 *et seq*. A copy of the Board's decision is attached hereto as Exhibit A.

The Commission respectfully submits that the Court should hold unlawful and set aside the Board's decision.

Venue is proper in this Circuit under 28 U.S.C. § 2343 because the principal offices of both the Commission and Mendocino Railway are in California.

Dated: November 25, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
DANIEL A. OLIVAS
Senior Assistant Attorney General
DAVID G. ALDERSON
Supervising Deputy Attorney General

*s/Patrick Tuck*

PATRICK TUCK
Deputy Attorney General
*Attorneys for Petitioner*
*California Coastal Commission*

# EXHIBIT A

52719
EB

SERVICE DATE – SEPTEMBER 26, 2025

SURFACE TRANSPORTATION BOARD

DECISION

Docket No. FD 36868

MENDOCINO RAILWAY—PETITION FOR DECLARATORY ORDER

Digest:[1] This decision confirms that Mendocino Railway is a Class III rail carrier subject to the jurisdiction of the Board.

Decided: September 26, 2025

On July 2, 2025, Mendocino Railway (MRY) filed a petition for declaratory order requesting that the Board confirm its status as a Class III rail carrier subject to the Board's jurisdiction and therefore entitled to the protections afforded by applicable federal preemption. MRY states that it seeks confirmation of its status due to recent legal challenges by local municipalities and state agencies. Two responses to MRY's petition were submitted by the American Short Line and Regional Railroad Association (ASLRRA) and the California Coastal Commission (Commission). As discussed below, the Board confirms that MRY is a Class III rail carrier subject to the jurisdiction of the Board and therefore entitled to any applicable benefits of federal preemption.

BACKGROUND

In Mendocino Railway—Acquisition Exemption—Assets of the California Western Railroad, Docket No. FD 34465 (STB served Apr. 9, 2004), the Board issued a notice of exemption pursuant to the class exemption procedures at 49 C.F.R. § 1150.31, authorizing MRY to acquire, through the trustee in bankruptcy for the California Western Railroad (CWRR), CWRR's rail assets, which consisted of all rail lines owned by CWRR between milepost 0 and milepost 40 in Mendocino County, Cal. (the Line). (Notice 1, FD 34465.) The sale of CWRR's assets had been authorized by order of the Bankruptcy Court for the Northern District of California, and CWRR's trustee was authorized to sell the assets to Sierra Railroad Company (SRC), which owned MRY. (Id.)[2] The notice states that MRY was formed for the purpose of acquiring and operating CWRR and that MRY would initially operate CWRR with the help of MRY's affiliated entities: Sierra Northern Railway (SNR) (a Class III rail carrier), Midland Railroad Enterprises Corporation (a railroad construction and track maintenance company), and

---

[1] The digest constitutes no part of the decision of the Board but has been prepared for the convenience of the reader. It may not be cited to or relied upon as precedent. See Pol'y Statement on Plain Language Digs. in Decisions, EP 696 (STB served Sept. 2, 2010).

[2] According to MRY, it is still a wholly owned subsidiary of SRC. (Pet. 2 n.1.)

Sierra Entertainment (a tourism, entertainment, and passenger operations company). (Id.) The notice was served and published in the Federal Register on April 9, 2004 (69 Fed. Reg. 18,999).

MRY states that it "acquired ownership of the Line" pursuant to the April 9, 2004 notice of exemption and that, between 2004 and 2021, it fulfilled its freight common carrier obligation through an operating arrangement with SNR. (Pet. 2, 6.) MRY further states that while its freight service provided through SNR was initially minimal, freight service increased in 2020 and 2021 as MRY began planning to rehabilitate the Line and market new business opportunities. (Id.) MRY states that, effective January 1, 2022, it assumed direct responsibility for operating freight service over the Line. (Id.)

MRY explains that it filed its petition for declaratory order because it is currently involved in several court proceedings in which its status as a common carrier is being challenged. (Id.) According to MRY, despite having obtained authorization to provide freight rail service over the Line in 2004, various entities assert that MRY either never became a common carrier subject to the Board's jurisdiction or that it is not currently a carrier. MRY states that some of the challenging entities view the Board-issued notice of exemption to be conditional and based on traffic volume. (Id. at 8.) MRY argues, however, that the Board has made clear that this is inaccurate, citing the agency's decision in Middletown & New Jersey Railroad—Lease & Operation Exemption—Norfolk Southern Railway, FD 35412, slip op. at 4-5 (STB served Mar. 27, 2013). (Pet. 8.)

MRY states that while publication of Board decisions is commonly understood by Board practitioners to convey common carrier status to petitioners 30 days after publication, as long as the licensed carrier also acquires operating or ownership rights for the associated line of railroad, the conditional ambiguity on the face of such decisions leaves them open to alternative interpretations and related arguments that can be raised in state and local forums. (Id. at 9.) MRY therefore argues that intervention from the Board is necessary as the ongoing legal battles regarding its status are proving to be debilitating and pose a risk of potential financial ruin for the company. (Id. at 6.)

On July 7, 2025, ASLRRA, a national trade association representing short line and regional railroads throughout North America, filed a motion for leave to submit comments as an amicus curiae party, along with its comments.[3] In the comments, ASLRRA argues, among other things, that an adverse decision against MRY in any of its pending court cases could have downstream implications, not only for MRY, but for other similarly situated carriers. (ASLRRA Reply 4.) According to ASLRRA, other ASLRRA members have expressed concern that outside of the Board and its practitioners, courts and other legal and business entities do not understand the licensing process for common carriers. (Id. at 6.) ASLRRA notes that its members often have limited resources to defend against such challenges to their regulatory status. (Id. at 4.)

[3] Because the issues presented in this case are relevant to ASLRRA members and the Commission does not object to ASLRRA's motion, the Board finds good cause to grant ASLRRA's motion for leave to submit comments as an amicus curiae party.

Thus, ASLRRA argues that the Board should establish a standard process for confirming a rail carrier's status. (Id. at 7.)[4]

On August 11, 2025, the Commission, a state agency created by California Public Resources Code § 30300, as part of the California Coastal Act of 1976, Cal. Pub. Res. Code §§ 30000-30900, filed a reply requesting that the Board deny MRY's petition. The Commission states that MRY's assertion that it is a Class III rail carrier subject to the Board's jurisdiction is unsupported by the record. (Comm'n Reply 4.) According to the Commission, MRY has provided no actual evidence that it has carried any freight over its lines or transported any non-excursion or non-local passengers in the more than 20 years it has owned the Line. (Id. at 3.) The Commission argues that even if there have been some nominal freight movements in the past, these operations are too minimal to be considered interstate commerce. (Id. at 6-7 (citing Napa Valley Wine Train, Inc.—Pet. for Declaratory Ord., 7 I.C.C.2d 954, 968 (1991)).)

The Commission also claims that MRY's relevant operations are limited to Mendocino County, Cal. (primarily in the City of Fort Bragg, Cal.), (id. at 2), and that MRY's single connection to another railroad and the interstate rail network has been embargoed and inoperative for more than 25 years, (id. at 4-5). As such, the Commission asserts that MRY is neither a part of the interstate rail network nor subject to the Board's jurisdiction. (Id. at 6.)

## DISCUSSION AND CONCLUSIONS

The Board has discretionary authority under 5 U.S.C. § 554(e) and 49 U.S.C. § 1321 to issue a declaratory order to eliminate controversy or remove uncertainty. See Bos. & Me. Corp. v. Town of Ayer, 330 F.3d 12, 14 n.2 (1st Cir. 2003); Delegation of Auth.—Declaratory Ord. Procs., 5 I.C.C.2d 675 (1989). The Board finds that it is appropriate to issue a declaratory order in this case to remove uncertainty concerning MRY's status. As discussed in more detail below, the record presented here confirms that MRY is indeed a Class III rail carrier subject to the Board's jurisdiction, and the Board will therefore issue a declaratory order to that effect.

Here, MRY properly invoked the class exemption procedures for rail line acquisitions by non-carriers, as prescribed in 49 C.F.R. §§ 1150.31-1150.34, which became effective on May 9, 2004. Accordingly, MRY received authorization from the Board to operate as a rail carrier, a fact that the Commission itself does not dispute.

There also does not appear to be any disagreement that MRY then consummated that authority by completing its purchase of CWRR's assets. In Middletown, the Board stated that, after obtaining acquisition authority from the Board, an entity that goes forward and acquires an existing railroad line becomes a rail carrier as of the date of the acquisition. The Board specifically explained:

[4] In addition, ASLRRA asks that the Board request that the courts in two of the ongoing legal proceedings involving MRY hold those proceedings in abeyance pending the Board's ruling on Mendocino's status. (ASLRRA Reply 8.) The Board finds the request moot in light of this decision.

> Because the common carrier obligation cannot be terminated without abandonment authorization from the Board, the transfer of the railroad line and the common carrier obligation that goes with it immediately imposed upon the new owner the continuing obligation to provide common carrier rail transportation service over the line upon reasonable request. As was the case with the prior owner, it does not matter whether the line has been inactive for a time, or even if it remains inactive after it is acquired. Either way, because a rail line itself is part of "transportation," *on the date that an acquiring entity . . . consummates a Board-authorized transaction by acquiring a common carrier railroad line, it becomes a "rail carrier" as defined by [49 U.S.C.] § 10102(5)* (i.e., a "person providing common carrier railroad transportation for compensation"), and a "rail carrier providing transportation subject to the jurisdiction of the Board" that is eligible to use 49 U.S.C. § 10902 (or the relevant exemption procedures).

Middletown, FD 35412, slip op. at 4-5 (emphasis added). Here, the previous owner of the Line, CWRR, was a rail carrier under 49 U.S.C § 10102(5), subject to the Board's jurisdiction, with a common carrier obligation on the Line to provide freight rail service upon reasonable request. See CWRR—Acquis. & Operation Exemption—Mendocino Coast Ry., FD 33005 (STB served Aug. 19, 1996). Thus, when MRY completed its purchase of the Line from CWRR, MRY became a rail carrier and assumed the common carrier obligation on the Line.

The Commission argues that even if MRY may have received a license to provide rail service, it did not retain its rail carrier status due to failure to provide freight service. Specifically, the Commission argues that in Middletown the Board was only addressing whether a small railroad was deemed a rail carrier at the time of its acquisition of a former rail carrier's line. (Id. at 8.) Pointing to the Board's statement in Middletown that the agency's jurisdiction is predicated on the carrier providing common carrier rail transportation for compensation, the Commission argues that MRY is not a carrier because it "has not provided any common carrier services (or extremely limited services) over the past 20 years." (Id. at 9.)

The Commission's reading of Middletown is incorrect. Contrary to its assertion, a rail carrier does not lose its status as a common carrier by not providing freight rail service. Indeed, the common carrier obligation cannot be terminated or relieved without abandonment or discontinuance authorization from the Board. See Middletown, FD 35142, slip op. at 4; see also Strohmeyer—Acquis. & Operation Exemption—Valstir Indus. Track in Middlesex & Union Cntys., FD 35527, slip op. at 2 (STB served Oct. 20, 2011) ("The only appropriate mechanisms a railroad may employ to excuse itself, permanently or temporarily, from its common carrier obligations on a line of railroad are abandonment, discontinuance, or embargo.") (citing Pejepscot Indus. Park—Pet. for Declaratory Ord., 6 S.T.B. 886, 898 (2003)). Once MRY became a rail carrier subject to the Board's jurisdiction in 2004, it assumed a common carrier obligation that remains in effect so long as it remains the line owner, until it receives and consummates abandonment or discontinuance authority.[5]

---

[5] The Commission attaches to its reply a 2023 decision by the Superior Court of California, County of Mendocino, denying MRY's request to acquire land through eminent

In any event, there is no evidence here that MRY has failed to comply with its common carrier obligation. Although the Commission claims that MRY has not provided freight service in years, the Board notes that, once an entity becomes a rail carrier, "it does not matter whether the line has been inactive for a time, or even if it remains inactive after it is acquired." Middletown, FD 35412, slip op. at 4.[6] Moreover, there is no allegation by the Commission that MRY has refused a request for freight rail service. Even if that were the case, MRY's common carrier obligation—and by relation, the Board's jurisdiction—would not extinguish. Instead, MRY could be held liable for damages for violating its common carrier obligation and could be ordered to restore service. See Groome & Assoc., Inc. v. Greenville Cnty. Econ. Dev. Corp., NOR 42087 (STB served July 27, 2005).

Additionally, the Board finds the Commission's reliance on Napa Valley to be misplaced. In Napa Valley, the Board's predecessor, the Interstate Commerce Commission (ICC), was seeking to determine if it had jurisdiction over a passenger excursion train service. The ICC found it did not have jurisdiction over the service, 7 I.C.C. 2d at 964-68, but never held that the agency's jurisdiction over the carrier had ended. Napa Valley, 7 I.C.C.2d at 969 ("We find that Wine Train's *passenger operations* are not subject to the jurisdiction of this Commission.") (emphasis added). Indeed, the ICC cited with approval agency precedent that, even where the agency lacks jurisdiction over the intrastate passenger service performed by a licensed rail carrier, the agency nonetheless has "jurisdiction over the carrier, because it had acquired a rail line over which freight had moved, and it had not abandoned the common carrier obligation to provide freight service." Id. at 965-966 (citing Staten Island Rapid Transit Operating Auth.—Pet. for Declaratory Ord., FD 30879 (ICC served Oct. 6, 1987)).[7] As such, even if MRY's intrastate passenger service is not subject to the Board's jurisdiction, MRY itself is.[8]

---

domain on the ground that MRY is not a public utility under state law. (Comm'n Reply, Ex. 1.) But the Superior Court's determination that MRY is not a public utility under state law does not control whether MRY is a Class III carrier for purposes of the Board's federal jurisdiction.

[6] In this proceeding, the Board will not address the need for service over the Line, or MRY's ability to provide service beyond the Line given its connecting carrier's embargo, as those issues are being adjudicated in a pending proceeding, Great Redwood Trail Agency—Adverse Abandonment—Mendocino Railway in Mendocino County, Cal., AB 1305 (Sub-No. 1).

[7] Moreover, the carrier in Napa Vally was the subject of an adverse abandonment proceeding years later (though the case was ultimately settled). See Napa Valley Wine Train, Inc.—Adverse Aban.—in Napa Valley, Cal., Docket No. AB 582 (STB served July 12, 2001).

[8] The Commission also questions whether MRY is providing actual passenger service (apart from its excursion service). (Comm'n Reply 7.) Because the Board finds that MRY is subject to the agency's jurisdiction regardless of the nature of its passenger operations, the Board need not address this argument.

For the reasons discussed above, MRY's petition for a declaratory order confirming its status as a Class III rail carrier subject to the Board's jurisdiction is granted.[9]

Regarding MRY's request seeking clarification that it is entitled to any applicable protections of federal preemption, the Board agrees that MRY is entitled to whatever preemption would otherwise be applicable to a rail carrier pursuant to 49 U.S.C. § 10501(b); however, the Board makes no finding with regard to the preemptive effects of § 10501(b) on any particular federal or state law or regulation.[10]

It is ordered:

1. MRY's petition for declaratory order is granted to the extent discussed above.

2. ASLRRA's motion for leave to submit comments as an amicus curiae party is granted, and its comments are accepted into the record.

2. This decision is effective on its service date.

By the Board, Board Members Fuchs, Hedlund, and Schultz.

---

[9] In its comments, ASLRRA suggests that the Board adopt a standard process that would allow a rail carrier to expeditiously obtain proof of its rail carrier status. (ASLRRA Comment 7.) To the extent that other smaller rail carriers also face difficulties regarding demonstrating their common carrier status, the Board is considering ways that an existing rail carrier could obtain verification that it is an authorized rail carrier subject to the Board's jurisdiction. In the interim, such carriers may seek a declaratory order from the Board if necessary.

[10] MRY has made clear that it is not seeking "any determinations with regard to the preemptive effects of any particular federal law or regulation," and asserts that the "law on preemption is fairly well developed." (Pet. 3 n.5.)

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** ______________________________________________

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ X ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Patrick J. Fuchs, Chair
Surface Transportation Board
395 E Street, SW
Washington, D.C. 20423-0001

Pamela Bondi, Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Crystal M. Zorbaugh
Counsel for Mendocino Railway
2001 L Street NW, Suite 720
Washington, DC 20036
czorbaugh@mullinslawgroup.net

**Description of Document(s)** *(required for all documents)*:

**Petition For Review of Surface Transportation Board Order**

**Signature** s/Najaree Hayfron **Date** November 25, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*